IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JAMES R. BLACKMON, JUSTIN M. ROZELLE, ERIC A. MYERS, JARED MUNSON,<br><br>*Plaintiffs,*<br><br>vs.<br><br>ZACHARY HOLDINGS, INC., CHIEF EXECUTIVE OFFICER OF ZACHARY HOLDINGS, INC., THE COMPENSATION AND BENEFITS COMMITTEE OF ZACHARY HOLDINGS, INC., JOHN DOES 1-10, WHOSE NAMES ARE CURRENTLY UNKNOWN,<br><br>*Defendants.* | SA-20-CV-00988-JKP |

## ORDER

This Order concerns Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement [#70]. The District Court referred this case to the undersigned for the management of all non-dispositive pretrial proceedings [#21], and the parties have consented to the jurisdiction of a United States Magistrate Judge for purposes of a decision on Plaintiffs' motion for final settlement approval [#80, #81]. The undersigned therefore has authority to issue this order pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, it is recommended that Plaintiffs' motion be granted.

### I.  Background

This case arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiffs James R. Blackmon, Justin M. Rozelle, Eric A. Myers and Jared Munson filed this action on behalf of themselves, the ZHI 401(k) Retirement Savings Plan ("the

1

Plan"), and all other former and present participants in the Plan. Plaintiffs allege that Defendants, who are the alleged Plan fiduciaries, breached their fiduciary duties to the Plan by: (1) selecting and retaining imprudent investments in the Plan; (2) causing the Plan to pay unreasonable investment management fees; and (3) causing the Plan to pay unreasonable recordkeeping and administrative fees. Plaintiffs' Second Amended Complaint, the live pleading, seeks a declaratory judgment that the acts of Defendants violate ERISA, a permanent injunction against Defendants, and compensatory damages.

After the Court denied Defendants' motion to dismiss, the parties commenced discovery, including the exchange of discovery requests and production of more than 13,000 pages of documents related to Plan administration, relationships between and among fiduciaries, and Defendants' investment and service provider monitoring processes. (Rubinow Decl. [#70-2], at ¶ 3.) Prior to the filing of any motion to certify the class action or additional dispositive motions practice, the parties reached a settlement.

Plaintiffs filed a motion for preliminary approval of the settlement on behalf of Plan participants and the Plan, and the Court granted the motion on February 18, 2022, after holding a hearing. The Order [#67] preliminarily approving of the settlement conditionally certified the following Settlement Class for settlement purposes:

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

The Order also preliminarily approved the parties' proposed settlement as fair and reasonable; established a qualified settlement fund; scheduled a fairness hearing for final review of the settlement; approved the appointment of Strategic Claims Services ("SCS") as settlement

administrator; provided a deadline of May 30, 2022, for any motion for attorneys' fees and briefs in support of final approval of settlement; and set a deadline of June 14, 2022, for objections to the settlement by class members.

SCS thereafter disseminated the settlement notice via electronic and first-class mail to 33,690 class members and former plan participants in March 2022, established a website and other contact information for the settlement, and followed other notice procedures mandated by the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715 ("CAFA"), Rule 23, and the Court's Order.  (Vieira Decl. [#71] at ¶¶ 3–10.)  Of the 33,690 class members, 19,031 were identified as non-active Plan participants and were mailed the Court-approved Settlement Notice along with a Former Participant Claim Form.  (Supplemental Vieira Decl. [#73], at ¶ 3.)  The remaining 14,659 active Plan participants received the Court-approved Settlement Notice.  (*Id.*) Plaintiffs now request final approval of the settlement,[1] as well as approval of the requested attorneys' fees, expenses, and service awards, and the entry of final judgment.

The Court held a fairness hearing on the motion on July 14, 2022, at which the parties appeared through counsel and reviewed the key components of the parties' agreement.  The Settlement Agreement provides that Defendants will make payment in an aggregate amount of $1,875,000.00 into a Qualified Settlement Fund, and will take certain actions in connection with monitoring the Plan's investments and fees, in exchange for the Settlement Class's release of its claims described in the Agreement. (Settlement Agreement [#65-3], at ¶¶ 1.26, 14.1–14.4.)  The Settlement Fund will be used to pay the following amounts associated with the Settlement: (1) compensation to members of the Settlement Class in accordance with the proposed Plan of Allocation; (2) any Case Contribution Award approved by the Court; (3) all Attorneys' Fees and

---

[1] A copy of the parties' Class Action Settlement Agreement can be found at docket entry #65-3 as Exhibit 1.

3

Expenses approved by the Court; (4) Independent Fiduciary Fees and Costs; (5) Administration Costs; and (6) Taxes and Tax-Related Costs.  (*Id.* at art. 5.)

The amount to be paid to each Class Member will be determined by the Plan of Allocation, which provides for *pro rata* allocation of settlement proceeds based on the average size of each Class Member's account during the Class Period.  (*Id.* at Ex. B.)  The 14,659 Class Members who are active participants in the Plan will automatically receive the benefit of the Settlement, and SCS has received 3,418 Former Participant Claim Forms for participation by former Plan participants.  (Vieira Decl. [#71], at ¶ 5; Supplemental Vieira Decl. [#73], at ¶ 10.) After payments have been issued to Class members, any amount remaining in the Settlement Fund from uncashed checks after 180 days will be distributed back to the Settlement Fund to be utilized as set forth in the Plan of Allocation.  (*Id.* at Ex. B, § 1.12.)  There shall be no reversion to Defendants.  (*Id.*)

Plaintiffs also request the approval of attorneys' fees for Class Counsel in the amount of 33 1/3% of the Settlement Fund ($625,000), reimbursement of expenses actually incurred in the prosecution of this case in the amount of $43,372.06, and Case Contribution Awards for each Class Representative (each of the four Plaintiffs) in the amount of $12,500.  SCS has not received any objections to the fairness, reasonableness, or adequacy of the Settlement, any terms therein, or to the proposed Administrative Expenses, Attorneys' Fees, or Plaintiffs' Case Contribution Awards. (Viera Decl. [#71], at ¶ 12.)

To further ensure that the Settlement Agreement is fair, reasonable, and adequate, as well as compliance with ERISA's prohibited transaction provisions, the Parties retained the independent fiduciary, Fiduciary Counselors, to approve and authorize the Settlement on behalf of the Plan and Class Members.  The independent fiduciary filed a report with the Court

authorizing the proposed settlement on behalf of the Plan and asserting no objections to the terms of the parties' agreement. (Fiduciary Report [#72].)

## II.  Analysis

The Court will grant Plaintiffs' motion, issue final certification of the Settlement Class, and issue final approval of the Settlement Agreement, attorneys' fees, expenses, and service awards.

**A.     Approval of the Settlement Class and Class Counsel**

The Court has already preliminarily approved the Settlement Class and appointed Plaintiffs' counsel, Miller Shah LLP and Capozzi Adler, P.C., as Class Counsel.  None of the circumstances warranting certification at the preliminary approval level have changed.  For the reasons stated in the previous order granting preliminary approval of the settlement, the Court again finds that the Settlement Class satisfies the requirements of Rule 23(a) and (b) and that Class Counsel satisfies the requirements of Rule 23(g).

**B.     Approval of the Settlement Agreement**

Additionally, the settlement warrants final approval.  Under Rule 23(e), this Court must undertake two steps in approving class action settlements: (1) preliminary approval of the settlement, such that notice should be provided to the proposed settlement class; and (2) final fairness review, including a hearing at which all interested parties are afforded the opportunity to be heard on the proposed settlement. Fed. R. Civ. P. 23(e).  The Court has already preliminarily approved the settlement and satisfied the notice requirements of CAFA and Rule 23.  The Court has held a live fairness hearing, at which all parties appeared through counsel.  The Court now considers whether to issue final approval of the settlement as "fair, reasonable, and adequate" to the Settlement Class.  Fed. R. Civ. P. 23(e)(2).

Rule 23 directs this Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Id.* Having considered the foregoing, the Court concludes that the requirements of Rule 23(e)(2) have been satisfied. Plaintiffs' interests are aligned with the Settlement Class because each member suffered injuries as a result of Defendants' conduct with respect to the Plan, and Class Counsel has substantial experience litigating complex class actions with similar factual and legal issues. (Rubinow Decl. [#70-2], at ¶¶ 4–5; Miller Shah Firm Profile [#70-4]; Capozzi Adler Firm Profile [#70-5].) Additionally, the settlement is the result of good faith, arm's-length negotiations by Class Counsel after engaging in significant discovery. Finally, the relief provided for the Settlement Class is adequate and treats class members equitably relative to one another. The parties' settlement alleviates the risks associated with litigating this case through trial and provides automatic *pro rata* relief to active Plan participants based on the size of the accounts during the relevant period. Additionally, over 3,000 former Plan participants have elected to participate in the settlement.

The Fifth Circuit has also identified six additional factors to consider in evaluating a class settlement's fairness: (1) the existence of fraud or collusion behind the settlement; (2) the probability of plaintiffs' success on the merits; (3) the range of possible recovery; (4) the complexity, expense and likely duration of the litigation; (5) the stage of the proceedings and the

amount of discovery completed; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). All of these factors also weigh in favor of final approval of the settlement.

There is no indication of any fraud or collusion in Class Counsel's negotiation of the settlement, which was reached after only two mediation sessions and, as previously noted, through good-faith, arm's-length negotiations by counsel. (Rubinow Decl. [#70-2], at ¶ 3.) Prior to settlement, the parties litigated a motion to dismiss and engaged in several months of formal discovery, enabling them to evaluate the merits of their various positions. Additionally, the proposed settlement mitigates the significant risks and expenses associated with the continued litigation of a complex ERISA trial, thereby avoiding years of additional delay and uncertain outcomes and the possibility of lesser recovery to Plan participants. In terms of possible recovery, Plaintiffs calculated Plan losses as ranging from approximately $8 million to $13.6 million, while Defendants vigorously disputed their liability. (*Id.* at ¶ 17.) The percentage dollar value recovered through the parties' settlement exceeds many recoveries received in other class action cases relative to estimates of recovery. *See, e.g.*, *Slipchenko v. Brunel Energy*, No. H-11-1465, 2015 WL 338358, at *11 (S.D. Tex. Jan. 23, 2015) (approving settlement award of $375,000 in context of possible award as high as $3 million for employee health care plan participants alleging COBRA violations); *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345 & n.19 (N.D. Tex. 2011) (approving class settlement "estimated at 2 to 3 percent of each class member's total losses" for investors alleging securities violations and breach of fiduciary duty against brokerage firm and dealers). Finally, Class Counsel's opinion that the settlement is fair, reasonable, and adequate; the approval of each Class Representative; and the lack of any objections from members of the Settlement Class all further support final approval.

C. **Approval of Attorney's Fees, Expenses, and Service Awards**

The Court will approve the requested attorney's fees, expenses, and service awards as set forth in the parties' Settlement Agreement. "[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In common fund cases, courts typically use one of two methods to calculate fees: the percentage and lodestar methods. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012). Although the Fifth Circuit has never explicitly endorsed the percentage method for common fund cases, it has been "amenable to its use, so long as the *Johnson* framework is utilized to ensure that the fee awarded is reasonable." *Id.* (internal quotation and citation omitted); *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (describing lodestar standard).

Plaintiffs propose this approach—an award of fees based on the percentage method (an award of 33 1/3%)—with a lodestar reasonableness check. When the percentage method is used, fee awards commonly fall between 20% and 50% of the overall settlement award. *See Welsh v. Navy Fed. Credit Union*, No. 5:16-cv-1062-DAE, 2018 WL 7283639, at *16 (W.D. Tex. Aug. 20, 2018); *see also Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 675 (N.D. Tex. 2010) ("[A]ttorney['s] fees awarded under the percentage method are often between 25% and 30% of the fund."). The proposed award of 33 1/3% of the total settlement is reasonable and consistent with awards made by other district courts in this Circuit under the percentage method. *See Welsh*, 2018 WL 7283638, at *16 (collecting cases and approving fee award of 20% of total fund); *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2014 WL 7332551, at *6–7 (N.D. Tex. Nov. 12, 2014) (approving fee award of 40% of settlement amount).

Additionally, the application of the lodestar method confirms the reasonableness of the percentage award. The lodestar amount here is $588,002.50 based on a blended rate of $581 per hour, which accounts for the various hourly rates of each of the attorneys and paralegals working on this case. (Rubinow Decl. [#70-2], at Ex. A.) Class Counsel have devoted 1,012 hours to this case as of the date of the filing of Plaintiffs' motion for settlement approval and will continue to spend time answering inquiries by members of the Settlement Class and overseeing the Settlement Administrator. (*Id.* at ¶¶ 12–13; Class Counsel Lodestar [#70-3].) The 33 1/3% award is just 1.06 times Class Counsel's lodestar.

Finally, the *Johnson* factors weigh in favor of approving the proposed fee award. In *Johnson*, the Fifth Circuit set forth 12 factors to be considered in applying the lodestar method: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform services adequately; (4) preclusion of other employment by attorney; (5) customary fee for similar work in the community; (6) whether fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of attorneys; (10) undesirability of case; (11) nature and length of professional relationship with client; and (12) awards in similar cases. 488 F.2d at 717–19. In addition to engaging in two private mediation sessions and negotiating the settlement agreement, Plaintiffs' counsel defended a motion to dismiss, engaged in significant discovery, and began preparing their anticipated motion for class certification and depositions. (Rubinow Decl. [#70-2], at ¶¶ 3–4.) Additionally, as previously noted, ERISA litigation is notoriously complex, requiring a high level of skill in achieving the settlement, and Class Counsel, in electing to proceed on a contingent fee basis, assumed a significant risk of nonpayment or underpayment in their representation of the Settlement Class in this case. Again, importantly, there have been no

objections to the requested fee award from class members, and the independent fiduciary has fully endorsed the proposed settlement, including the fee award to Class Counsel.

The requested expenses in the amount of $43,372.06 are also reasonable. This Court may award reasonable litigation expenses authorized by the parties' agreement. *See* Fed. R. Civ. P. 23(h). Trial courts may determine what is reasonable based on an objective standard of reasonableness, i.e., the prevailing market value of services rendered. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The incurred $43,372.06 in expenses requested for reimbursement by Plaintiffs include filing fees, mediation expenses, expert fees, copying, delivery, and telecommunications charges, computer-based research and database charges, and similar litigation expenses. (Class Counsel Expenses [#70-3], at 3.) These expenses are all associated with Class Counsel's investigation, discovery, and mediation, and other activities necessary to effectively prosecute this case. (*Id.*) The Court has reviewed the time and expenses incurred by Class Counsel and finds the incurred expenses to be reasonable.

The Class Representatives also deserve to be compensated for their time and effort, and the $12,500 award requested for each Plaintiff is reasonable. Incentive awards "are intended to compensate class representatives for work done on behalf of the class" and have been approved after considering the actions plaintiffs have taken to protect the interests of the class and the amount of time and effort expended in pursuing litigation. *Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 868 (S.D. Tex. 2011) (quoting *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 959 (9th Cir. 2009)). Plaintiffs assert that they have each committed considerable time to the pursuit of this case justifying service awards in the amount of $12,500 by collecting and providing documents to Class Counsel, answering discovery requests, participating in regular conference calls with Class Counsel, and preparing for their depositions prior to

settlement. (*See* Rubinow Decl., at ¶ 6.) Plaintiffs' requested service award is in line with similar incentive awards awarded in this Circuit. *See, e.g.*, *Poe v. United Ass'n of Journeyman & Apprentices of Plumbing & Pipefitting Indus. of United States of Am. AFL-CIO Loc. 198 Health & Welfare Fund*, No. CV 18-00667-BAJ-SDJ, 2021 WL 4497480, at *3 (M.D. La. Sept. 30, 2021) (approving case contribution awards in amount of $38,000); *Hunter v. Berkshire Hathaway, Inc.*, No. 4:14-cv-663-Y, 2020 WL 13302384, at *2 (N.D. Tex. May 13, 2020) (approving case contribution awards ranging from $5,000 to $15,000). In summary, the Court will approve the requested fees, expenses, and case contribution awards as reasonable.

Having considered Plaintiffs' motion, the proposed settlement agreement, the parties' related filings, and the presentation of counsel at the live hearing,

**IT IS HEREBY ORDERED** that Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement [#70] is **GRANTED**. The Court will enter Plaintiffs' Proposed Final Approval Order and Judgment [#65-3, Ex. D] by separate Order.

SIGNED this 5th day of August, 2022.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE